IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| ARVEST BANK, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 6:14-cv-03287-SRB |
|  | ) |  |
| MARK D. ELGIN and | ) |  |
| LYNN ELGIN, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## ORDER

Before the Court are Plaintiff Arvest Bank's Motion for Summary Judgment (Doc. #55); Defendants, Mark Elgin and Lynn Elgin's, Motion to Strike Tony Bornhoft's Affidavit (Doc. #58); and Defendants, Mark Elgin and Lynn Elgin's, Counter Motion for Summary Judgment (Doc. #59). For the reasons stated below, the motions are DENIED.

### I.     Legal Standard

Both parties move for summary judgment on the single count in Plaintiff's Complaint – Breach of Guaranty. A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). When a fact for or against summary judgment is established by affidavit, the affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If an affidavit

or portion of an affidavit fails to meet the criteria set forth in Fed. R. Civ. P. 56(c)(4), the Court must disregard the improper affidavit or improper portion.

"Summary judgment is appropriate if the evidence, viewed in the light most favorable to the [nonmovant] and giving [the nonmovant] the benefit of all reasonable inferences, shows there are no genuine issues of material fact and [the movant] is entitled to judgment as a matter of law." *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011) (citation omitted). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011) (citation omitted). A party opposing summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007) (citation omitted). Summary judgment should not be granted if a reasonable jury could find for the nonmoving party. *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (citing *Anderson*, 477 U.S. at 248).

**II.     Background**

Considering the parties' factual positions as well as the record made at the telephonic hearing held on October 23, 2015, in the light most favorable to the non-moving party, the Court finds the relevant facts to be as follows:

Effective October 3, 2006, Branson Hills Development Company, L.L.C. and Arvest Bank entered into a Master Loan Agreement providing for a revolving line of credit "in the maximum amount of Fourteen Million Four Hundred Thousand Dollars ($14,400,000.00)[.]"

2

(Doc. #56-2, p. 1). On September 30, 2006, Mark and Lynn Elgin (collectively "the Elgins") entered into a Limited Guaranty Agreement that provided, in part:

> Section 1. Guaranty. Guarantors hereby unconditionally guarantee the punctual payment when due, whether at stated maturity by acceleration or otherwise, of:
>
> (a) any sum now or hereafter due under the Master Loan Agreement and/or any of the other Loan Documents to which Borrower is a party, whether for principal, interest, fees, expenses or otherwise[.]

(Doc. #56-3, p. 1). The Limited Guaranty Agreement included a maximum obligation provision in the amount of $5,000,000 and further provided, "A further limitation of liability is that the guaranty of guarantor Lynn Elgin may be enforced only against property held jointly by guarantors Mark Elgin and Lynn Elgin." (Doc. #56-3, p. 4). Around the same time, additional guarantors entered into similar guaranty agreements but with varying maximum obligation provisions.

Effective July 31, 2009, Branson Hills executed a Promissory Note reflecting conversion of the line of credit into a loan in the amount of $13,903,690.52. (Doc. #56-4). Effective the same date, Branson Hills executed an Amended and Restated Master Loan Agreement regarding the "closed end loan" that provided, in part:

> WHEREAS, Richard E. and Sue Ann Huffman, Marc and Patricia Williams, Santo and Jane Catanese, Mark and Lynn Elgin, and Evergreen/Branson Hills, L.L.C. (collectively "Guarantors") benefit from Lender extending credit and other services to Borrower and Guarantors, collectively and individually, agree to guarantee prompt payment by the Borrower on the terms set out in their separate Guaranty Agreements; and
>
> WHEREAS, lender would not enter in to this Agreement without the guarantees of the Guarantors and their consent to the terms of this Agreement and the Loan and the reaffirmation of their obligations under their respective guarantees[.]

(Doc. #56-5, p. 1). On August 18, 2009, the Elgins executed a Confirmation and Reaffirmation of Limited Guaranty Agreement effective as of July 31, 2009, that provided, in part, "The

3

undersigned shall continue to guaranty pursuant to the terms of the Limited Guaranty Agreement all of the Guaranteed Obligations including, without limitations, the Promissory Note." (Doc. #56-6, p. 1). Though the parties disagree over the meaning and enforceability of the loan documents, the Elgins do not dispute that they executed the 2006 Limited Guaranty Agreement and the 2009 Confirmation and Reaffirmation of Limited Guaranty Agreement, nor do they dispute the authenticity of the other relevant loan documents.

The loan terms were modified several times including, but not limited to, changes in the interest rate, maturity date, and insurance requirements. Though the maturity date was extended at least twice, Branson Hills defaulted on the Note at maturity on July 30, 2010. Arvest Bank filed a lawsuit in Missouri state court against the Elgins and the other guarantors as well as Branson Hills to recover money due under the Note. The state-court case ended with the entry of a consent judgment against Branson Hills on August 22, 2013, which provided, in part:

> The Court, now being fully advised, finds that Defendant Branson Hills Development Company, LLC has consented to a judgment on the merits in favor of the Plaintiff Arvest Bank and against Defendant in the amount of $10,553,297.16. Plaintiff Arvest Bank's claims against Mark Elgin and Lynn Elgin are specifically reserved and are not affected by this Consent Judgment.

(Doc. #56-10). Thereafter, Arvest Bank dismissed the claims against the Elgins in the state-court case without prejudice and filed the present lawsuit seeking to recover from the Elgins their maximum obligation of $5,000,000 under the Limited Guaranty Agreement.

### III. Discussion

#### a. Motion to Strike Tony Bornhoft's Affidavit

Arvest Bank relied on the affidavit of one employee in support of its motion for summary judgment, i.e. Tony Bornhoft who attested to being the "Regional Assets Manager of Arvest Bank[.]" (Doc. #56-1, ¶2). The Elgins moved to strike the Bornhoft affidavit in its entirety as

4

not based on personal knowledge in contravention of Fed. R. Civ. P. 56(c)(4) due to the following statement in the affidavit, "The facts stated herein are based on matters known personally to me and/or information provided to me by other officers and employees of the Bank." No basis exists to strike the entire affidavit. For example, many of the statements in the affidavit serve to authenticate the loan documents at issue based upon Mr. Bornhoft's status as "a duly authorized custodian of the business records attached hereto[.]" (Doc. #56-1, ¶4). These statements clearly meet the standard set forth in Rule 56(c)(4).

The only specific paragraph the Elgins point to as deficient under Rule 56(c)(4) is paragraph 11, which concerns Arvest Bank's reliance on the Limited Guaranty Agreement and Confirmation Agreement. For the reasons stated more fully below, the Court does not rely on paragraph 11 in reaching its holding. As a result, the Court finds that the affidavit establishes Mr. Bornhoft's personal knowledge and competency to testify with respect to all of the affidavit statements that are germane to the Court's decision, and the Court, therefore, denies the Elgins' motion to strike. *See Wilson Road Dev. Corp., et al., v. Fronabarger Concreters, Inc., et al.,* 971 F. Supp. 2d 896, 903 (E.D. Mo. 2013) (denying motion to strike where court determined corporate representative had acquired requisite personal knowledge and disputed paragraphs were not germane to the court's ruling on summary judgment).

### b. Plaintiff Arvest Bank's Motion for Summary Judgment

The parties agree that Missouri law governs. (Doc. #60, p. 7; Doc. #64, p. 5). Under Missouri law and in order to establish its claim for Breach of Guaranty, Arvest Bank must prove: "(1) that [the Elgins] executed the guaranty, (2) that [the Elgins] unconditionally delivered the guaranty to [Arvest Bank], (3) that [Arvest Bank], in reliance on the guaranty, thereafter extended credit to the debtor, and (4) that there is currently due and owing some sum of money

5

from the debtor to [Arvest Bank] that the guaranty purports to cover." *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. en banc 1993) (citing *Linwood State Bank v. Lientz*, 413 S.W.2d 248, 256 (Mo. 1967)). The Court finds that a genuine issue of material fact remains at least with respect to the fourth element of Arvest Bank's claim in that Arvest Bank has failed to establish as a matter of law that it is entitled to a judgment in the full amount of the Elgins' maximum obligation of $5,000,000.

In *First Bank Centre v. Thompson, et al.*, 906 S.W.2d 849 (Mo. Ct. App. 1995), the Missouri Court of Appeals affirmed the trial court's entry of a directed verdict in favor of defendants/guarantors where plaintiff rested its case without presenting any evidence from which the jury could determine the amount due to plaintiff under the guaranties. The court pointed to plaintiff's failure to adduce evidence of how foreclosure sale proceeds should have been credited to the debt and how much interest was owed at the time of trial. *Id.* at 855. In addressing the elements outlined in *ITT Commercial*, the *First Bank Centre* court stated, "We do not understand the phrase 'some sum of money,' as used in that case, to mean some undetermined amount, but rather to mean a specific sum established by the evidence." *Id.* at 856.

Arvest Bank relies solely on the Consent Judgment entered against Branson Hills in the state-court case as evidence of the fourth element of its claim and asks the Court to conclude that because the Consent Judgment was entered in the amount of $10,553,297.16, the Elgins should be found liable for their maximum obligation of $5,000,000. The Consent Judgment alone is insufficient proof upon which to base entry of summary judgment. Arvest Bank states that all guarantors other than the Elgins have settled their claims, but Arvest Bank provides no information regarding when or in what amount(s) those claims have been resolved or whether the

6

monetary resolution has been or should be credited against the amount stated as owing in the Consent Judgment.

Further, Arvest Bank provides no information regarding what portion of the Consent Judgment amount constitutes principal, interest, or fees. Under the Limited Guaranty Agreement, the Elgins might be found to owe legal fees and expenses if the fees are "reasonable" and if Arvest Bank is the "prevailing party." (Doc. #56-3, p. 1). While admitting that legal fees are included in the Consent Judgment amount, Arvest Bank argues that the exclusion of fees would not reduce the amount owed under the guaranty below $5,000,000, and therefore judgment should be entered in the full amount of the Elgins' maximum obligation. While that may be true, the Court cannot enter summary judgment without any evidentiary proof of that fact. Finally, the Consent Judgment was entered in 2013, and Arvest Bank provides no evidence of what, if any, amounts have been collected since 2013. Even if nothing has been collected since 2013, Arvest Bank must provide evidence to the Court establishing that fact, and they have not. As a result, a genuine issue of material fact remains to be decided at least with respect to the fourth element of Arvest Bank's claim for breach of guaranty, and Arvest Bank's motion for summary judgment is denied.

### c. The Elgins' Counter Motion for Summary Judgment

The Elgins make numerous arguments as to why Arvest Bank's claim should not survive summary judgment, all of which fail. First, the Elgins argue that the original loan terms were materially modified without the Elgins' consent, and their guarantee obligation is therefore extinguished. The cases cited by the Elgins do not apply where, as here, the effect of modifications to the loan terms is addressed in the guaranty agreement. The Limited Guaranty Agreement provides, "The liability of Guarantors under this Agreement shall be absolute,

7

continuing, and unconditional irrespective of: . . . (b) any change in the time, manner or place of payment of, the interest rate payable under, or any other term of, all or any of the Guaranteed Obligations, or any other amendment or waiver of or any consent to departure from the Loan Agreement or any of the other Loan Documents[.]" (Doc. #56-3, p. 2). In *Boatman's Nat'l. Bank of St. Louis v. Nangle*, 899 S.W.2d 542, 546 (Mo. Ct. App. 1995), the court held that "a change within the scope of a guaranty agreement does not discharge the guarantor." The Elgins have failed to establish that any change was made outside the scope of the guaranty agreement, and therefore, summary judgment is denied on this point.

Next the Elgins argue that Arvest Bank's motion for summary judgment is barred by the doctrine of collateral estoppel because summary judgment was denied in the Missouri state court action. The fourth element necessary to establish collateral estoppel is "the issue sought to be precluded must have been determined by a valid and final judgment[.]" *Olsen v. Mukasey*, 541 F.3d 827, 831 (8th Cir. 2008). Denial of a motion for summary judgment is not a final judgment, and the Missouri state court's decision has no preclusory effect here. *See Miller v. Schoenen, et al.*, 75 F.3d 1305, 1308 (8th Cir. 1996) (stating orders denying motions for summary judgment "are not final orders in the traditional sense").

The Elgins argue that the merger doctrine extinguished the note when the Consent Judgment was entered such that Arvest Bank "cannot sue Elgin or anyone else with claims related to the same note." In *State ex rel. Noe v. Cox*, 323 Mo. 520, 529 (Mo. 1929), a case relied upon by the Elgins, the court stated " a valid judgment upon a promissory note merges the cause of action which previously existed upon the note, and, after a valid judgment has been rendered upon the note, recovery must be had upon such judgment and not upon the note." The Consent Judgment was entered against Branson Hills and specifically reserved Arvest Banks'

8

claims against the Elgins.  As a result, if any "cause of action" was merged with the judgment, it was the cause of action against Branson Hills only and not the Elgins.  The Elgins motion for summary judgment on this point is denied.

The Elgins argue that summary judgment should be entered in their favor because the Limited Guaranty Agreement is a "sham guaranty" in that the Elgins "provided guaranty agreements to pay their own debts masked in the name of a shell entity, [Branson Hills]."  (Doc. #60, p. 23).  The Elgins do not cite one Missouri case recognizing the doctrine of "sham guaranty" as a defense; rather, the Elgins cite only to California law on this issue.  As the parties agree that Missouri law applies, the Elgins motion for summary judgment on this issue is denied.

Finally, Lynn Elgin argues summary judgment should be entered in her favor because she and Mark Elgin are divorced, and they own no joint property.  As previously stated, the Limited Guaranty Agreement provides, "A further limitation of liability is that the guaranty of guarantor Lynn Elgin may be enforced only against property held jointly by guarantors Mark Elgin and Lynn Elgin."  (Doc. #56-3, p. 4).  The totality of the evidence Lynn Elgin submits in support of her argument is the couple's Final Judgment of Divorce dated April 11, 2013, and Lynn Elgin's affidavit from December 2011, that was submitted in support of summary judgment to the Missouri state court.  That the parties are now divorced does not necessarily mean they no longer hold joint property.  Further, Lynn Elgin's 2011 affidavit is insufficient proof that *presently* the parties own no joint property.  As a result, Lynn Elgin's motion for summary judgment on this issue is denied.

### IV.  Conclusion

For the foregoing reasons, it is hereby ORDERED that Plaintiff Arvest Bank's Motion for Summary Judgment (Doc. #55); Defendants, Mark Elgin and Lynn Elgin's, Motion to Strike

9

Tony Bornhoft's Affidavit (Doc. #58); and Defendants, Mark Elgin and Lynn Elgin's, Counter Motion for Summary Judgment (Doc. #59) are DENIED.

**IT IS SO ORDERED**.

                                            /s/ Stephen R. Bough
                                            STEPHEN R. BOUGH
                                            UNITED STATES DISTRICT JUDGE

Dated: November 20, 2015